THE NEW YORK, CHICAGO & ST. LOUIS RD. CO., APPELLEE, *v.*
TRICO TRUCKING, INC., APPELLANT, ET AL.

[Cite as N. Y., C. & St. Louis Rd. Co. v. Trico Trucking, Inc.,
9 Ohio App. 2d 184.]

(No. 690—Decided February 1, 1967.)

Messrs. *Robison, Curphey & O'Connell* and *Mr. Richard A. Betts*, for appellee.

*Mr. Robert G. Payne* and *Messrs. Finn, Manahan & Pietrykowski*, for appellant.

MIDDLETON, J. The New York, Chicago & St. Louis Railroad Company commenced this action in the Court of Common Pleas to recover damages from The Heffner Construction Company, Trico Trucking, Inc., and Charles McClure for property loss resulting from a collision of a truck driven by Larry Mason with a train of the New York, Chicago & St. Louis Railroad Company. Subsequent to the filing of this action, The New York, Chicago & St. Louis Railroad Company was merged with The Norfolk & Western Railway Company, and The Norfolk & Western Railway Company is the real party in interest and was substituted for The New York, Chicago & St. Louis Railroad Company as party plaintiff. The defendant Trico Trucking Company addressed certain interrogatories to plaintiff, which were answered by the company and which disclosed that various insurance companies had insured the railroad against loss by reason of derailments. At the conclusion of plaintiff's case the court sustained the motion of Heffner Construction Company to direct a verdict in its favor and against the plaintiff and simultaneously denied the motions of Trico Trucking Company and Charles McClure for a directed verdict in their favor. The court found further upon motion of plaintiff that as a matter of law Larry Mason, the driver of the truck involved, was guilty of negligence, that the plaintiff as a matter of law was free from negligence, which may have contributed to the derailment of the train, and that as a matter of law Mason was working in furtherance of the business of either one or both of the remaining companies, Trico Trucking Company and/or Charles McClure. The jury rendered a verdict in favor of the plaintiff and against Trico Trucking Company only, in the sum of $431,084.78, and judgment was entered accordingly. The action against McClure was dismissed.

From this judgment appeal is prosecuted to this court by Trico Trucking Company. The defendant Trico assigns 18 claimed errors committed by the court, to wit:

"1. The court erred in sustaining plaintiff's motion for a directed verdict made at the conclusion of all the evidence and in holding that Larry Mason, as a matter of law, was acting on and in furtherance of the business of either defendant, Trico Trucking, Inc., or Charles McClure at the time of the collision.

"2. The court erred in instructing the jury that Larry Mason was acting on and within the scope of his employment as an employee of one or both defendants at the time of the collision.

"3. The court erred in sustaining plaintiff's motion for a directed verdict on the issues of liability, contributory negligence of the plaintiff, proximate cause, and scope of employment of Larry Mason.

"4. The court erred in its instruction to the jury with respect to the issues of liability, contributory negligence of the plaintiff, proximate cause, and scope of employment of Larry Mason.

"5. The court erred in instructing the jury, as a matter of law, to return a verdict against one or both defendants.

"6. The court erred in submitting special instructions Number 7 which provided as follows: 'You are instructed as a matter of law that Larry Mason was negligent and that his negligence was the sole proximate cause of the derailment of the Nickle Plate train. Therefore, you must return a verdict in favor of the plaintiff.'

"7. The court erred in overruling the motion of defendant Trico Trucking, Inc., for a directed verdict made at the close of plaintiff's evidence and at the close of all the evidence.

"8. The court erred in instructing the jury, at the conclusion of all the evidence that as a matter of law the jury must find in favor of plaintiff, assessing damages against one or both defendants.

"9. The court erred in sustaining plaintiff's motion for a directed verdict and in holding that plaintiff, as a matter of law, was not contributorily negligent in causing the said collision.

"10. The court erred in instructing the jury that Robert Farr, the engineer, was not required as a. matter of law to

look for vehicles traveling on the county road and approaching the railroad intersection.

"11. The court erred in overruling the motion of defendant Trico Trucking, Inc., to dismiss plaintiff's supplemental petition relating to subrogation claims of several insurance companies or, in the alternative, to reduce the prayer of plaintiff's amendment to its second petition in the amount claimed by said insurance companies in the supplemental petition.

"12. The court erred in instructing the jury that even though certain insurance companies were parties plaintiff, that this fact was of no concern to the jury and that plaintiff railroad could recover the entire amount of the damages alleged.

"13. The court erred in refusing to give to the jury, in advance of argument, written instructions numbered 1 through 6 requested by defendant Trico Trucking, Inc.

"14. The court erred in refusing to give the jury the written interrogatories numbered 1 through 4 requested by defendant Trico Trucking, Inc.

"15. The court erred in charging the jury that under the evidence defendants Trico and McClure may have been engaged in a joint adventure.

"16. The court erred in submitting special request to charge number 8 propounded by plaintiff, which stated:

" 'If you find by a preponderance of the evidence that the defendants Trico Trucking, Inc., and Charles McClure were associated with an intent by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combined their efforts, property, money, skill and knowledge, without creating a partnership, and agreed that there would be a community of interest among them as to the purpose of the undertaking, and that each would stand in the relationship of principal, as well as agent, as to the other, with an equal right of control of the means employed to carry out the common purpose of the adventure, then you are instructed that the said defendants were engaged in a joint business adventure as a matter of law.'

"17. The court erred in submitting special request to charge number 9 propounded by plaintiff, which stated:

" 'If you find by a preponderance of the evidence that the

defendants Trico Trucking, Inc., and Charles McClure were engaged in a joint business adventure, then your verdict must be against both defendants.'

"18. The court erred in submitting special request to charge number 10 propounded by plaintiff, which stated:

" 'You are instructed as a matter of law to return a verdict in favor of plaintiffs and against both defendants if you find by a preponderance of the evidence that the defendants were engaged in a joint business adventure at the time of the derailment, but if you find that they were not so engaged, then you should return a verdict in favor of plaintiffs and against the defendant which had the right of control over Larry Mason at the time of the derailment.' "

The record discloses the following facts: The Heffner Construction Company, prior to the time of the collision, had entered into a contract with the state of Ohio to construct a section of Interstate Highway 75 extending through Hancock County. In the construction of this highway a certain type of gravel was required in the formation of the road bed. This gravel Heffner Construction Company purchased from one Merritt Green and entered into a contract with the defendant Trico Trucking Company to haul the gravel from the gravel pit on the Green farm to the project site. Under its agreement with Heffner Construction Company Trico was to receive $.45 per ton hauled. In order to haul the required amount of gravel needed per day by the contractor, Trico contracted with various truck owners in the vicinity of Findlay to haul gravel from the Green farm to the project site. Trico, not having sufficient trucks to supply the contractor's daily requirement, advised other truck owners of the availability of the work. Where a nonowner truck performed work under the Heffner-Trico contract the owner would receive $.40 per ton hauled, $.05 going to Trico. Charles McClure was the owner of one truck hauling under the Heffner contract. McClure testified that he met Mason eight or ten days after he had been driving a truck hauling gravel for Trico. It does not appear from the record who employed Mason. The record does, however, reveal that Mason was carried on Trico's payroll, that Trico made deductions for federal income tax and social security and that Mason was covered by workmen's compensation and unemployment compensation. The wages earned

by Mason were also deducted by Trico, and the balance was paid to McClure.

The work at the gravel pit began at 7 a. m., while work at the project site would start at 7:30 a. m. and it would remain open until 6 p. m. It took approximately one-half hour for a truck to travel from the gravel pit to the project site. The difference in hours of work at the gravel pit and the project site was required to permit the first truck to leave the gravel pit at 7 a. m. and reach the project site at 7:30 a. m. and the last load to leave the pit at 5:30 p. m. and reach the project site at 6 p. m., the project site closing hour. At the project site the gravel was dumped into a spreader which distributed the gravel where required.

The record does not disclose any direct evidence as to the length of time truck drivers were required to work, nor is there any evidence that they were required to check in with anyone upon reporting for work in the morning nor what time they could leave at the end of the day. Some drivers returned to the parking lot at the gravel pit after work to procure gas and turn in their weight slips, and others did not. This would depend upon the individual driver.

On September 10, 1963, the day of the train collision, Mason dumped a load of gravel at the spreader at approximately 5:15 p. m. and inquired of the man in charge if he (Mason) had time to make another trip, which man stated that he did not think so. Mason is said to have replied, "O.K., I'm going in now." At the time of the collision Mason was traveling west on County Road 26. There is no evidence as to where Mason was heading at the time of the collision. Whether he was on his way to the Green farm to turn in his weight tickets, to park his truck, or to get gas or on his route home, there is no direct evidence. At the time, he was on a route from the project site to the gravel pit and was also on a route which could lead to his home at Grand Rapids.

Other than the above the record is silent as to the intention of Mason or his destination just prior to the collision.

The trial court charged as a matter of law that reasonable minds could not differ that at the time of the collision Larry Mason was acting within the scope of his employment as an employee of one or the other of the defendants, Trico Company,

or McClure, or both. With this charge we do not agree. There being no direct evidence of Mason's destination or intentions at the time of the collision, reasonable minds could differ as to whether Mason was at the time acting within the scope of his employment. This question should have been submitted to the jury. Authorities are all agreed that in directing a verdict the court must construe the evidence most strongly in favor of the party against whom the motion for a directed verdict is made, and, where there is substantial evidence to support his side of the case upon which reasonable minds may reach different conclusions, the motion must be denied.

We find error of the court in sustaining plaintiff's motion for a directed verdict made at the conclusion of all the evidence and also error in the court's instructions to the jury that Larry Mason was acting on and in the scope of his employment as an employee of one or both of the defendants at the time of the collision. We sustain defendant's assignments of error numbers 1, 2, 3, 4, 5, 6 and 8 and overrule assignment of error number 7.

We find the court erred in sustaining plaintiff's motion for a directed verdict in holding as a matter of law that the plaintiff was not guilty of contributory negligence in causing the collision. The evidence in reference to the sounding of the whistle and the ringing of the bell is in conflict. The evidence was not of such character that it can be said that reasonable minds could come to but one conclusion. We conclude this was a jury question and should have been submitted to the jury. We find error in the court's charge as set forth in the assignment of error number 9.

Assignment of error number ten relates to an instruction given by the court to the jury, not specially or as part of the general charge, but during the examination of one of the plaintiff's witnesses. Having bearing on the contributory negligence, if any, of the plaintiff, it was withdrawn from the jury by virtue of the court's direction of a verdict in favor of the plaintiff on this issue. The error, if any, in the giving of such instruction was thus cured by its withdrawal, and, the jury not having acted on the instruction, it had no effect on the verdict rendered by the jury upon which the judgment appealed from was entered.

The court properly overruled defendant's motion claimed as error in the assignment of error number 11 and the claimed error set forth in assignment of error number 12. The insurance companies were proper parties, although not necessary parties. The division of any recovery by the plaintiff was of no concern of the defendant nor was it a question for submission to the jury. The purpose of their joinder was to assert against the plaintiff the right of apportionment of any recovery had in favor of the plaintiff. *Holibaugh* v. *Cox*, 167 Ohio St. 340; *Cleveland Paint & Color Co.* v. *Bauer Mfg. Co.*, 155 Ohio St. 17; *Northwestern Ohio Natural Gas Co.* v. *First Congregational Church of Toledo*, 126 Ohio St. 140.

The court having ruled against the defendant Trico on the issue of the scope of employment, the issue raised by the requested instructions and interrogatories were no longer applicable to the issues in the case and were properly refused. Assignments of error numbers 13 and 14 are overruled.

Defendant claims the court erred in charging the jury on the question of joint adventure. While the record does not contain evidence to support a claim of joint adventure, the charge as given could not be prejudicial to the defendant as it is apparent that the jury found Trico to be solely liable and not liable as a joint venturer. We find assignments of error numbers 15 through 18 without merit. *Ford, Exr.*, v. *McCue*, 163 Ohio St. 498.

For the errors herein set forth the judgment must be reversed and the cause remanded.

*Judgment reversed.*

YOUNGER, P. J., and GUERNSEY, J., concur.